IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROCKY VIGIL,<br><br>    Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | REPORT AND RECOMMENDATION<br><br><br>Case No. 2:14-cv-00540-TS-PMW<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Paul M. Warner |

Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). United States District Judge Ted Stewart has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on May 5, 2016, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the" administrative law judge (ALJ)'s. *Id.* (citation omitted). Where the evidence as a whole can support either the agency's decision or an award of benefits,

Page 1

the agency's decision must be affirmed.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

In this case, Plaintiff claimed disability at the age of 20, based on paranoid schizophrenia, (Tr. 34, 383).  He completed high school and had past relevant work on an assembly line and performing general clean up at a box company (Tr. 374, 384).  After a hearing, an ALJ denied Plaintiff's application in January 2013 (Tr. 192-210).  The Appeals Council subsequently granted Plaintiff's request for review and remanded the case for further proceedings (Tr. 212-13).  Following a second hearing (Tr. 70-113), an ALJ again denied Plaintiff's application on February 24, 2014 (Tr. 9-27).  The Appeals Council declined Plaintiff's second request for review (Tr. 2-6).

In his February 2014 decision, the ALJ followed the five-step sequential evaluation process for evaluating disability claims (Tr. 12-27).  *See generally* 20 C.F.R. § 404.1520(a)(4). As relevant here, the ALJ found that Plaintiff had severe impairments (borderline intellectual functioning, psychotic disorder, schizophrenia, and a substance addiction disorder), but that he retained the residual functional capacity to perform a reduced range of unskilled work with no exertional limitations (Tr. 18).  Considering this residual functional capacity, the ALJ found that Plaintiff was not capable of performing his past relevant work, but could perform other jobs existing in significant numbers in the national economy (Tr. 18-27).

After careful review of the entire record, the Court concludes that the ALJ complied with the Appeals Counsel's remand order.  The Appeals Council instructed the ALJ to consider listing 12.05C, 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C), evaluate whether Plaintiff had the requisite deficits in adaptive functioning for this listing, and "if necessary, obtain evidence from [a] medical expert to clarify whether the claimant's impairments met or equaled the severity" of

any listing (Tr. 212).  The ALJ complied with the remand order by obtaining evidence from a medical expert, Dr. Ronald P. Houston, and then ordering a consultative evaluation from Dr. John D. Hardy, and this Court concludes that the ALJ's determination that Plaintiff did not meet or equal Listing 12.05 was supported by substantial evidence in the record, including the opinions of Drs. Hardy, Houston, Huebner, and Kjolby.

As noted by the Commissioner, Listing 12.05 contains an introductory paragraph, or a "capsule definition," with criteria the claimant must meet in addition to meeting one of the "four severity prongs" for intellectual disability (previously referred to as mental retardation).  The capsule definition of 12.05 requires that to be found intellectually disabled, one must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.05.  This definition mirrors the medical criteria for diagnosing mental retardation. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20,018, 20,022 (Apr. 24, 2002).  Meeting the introductory paragraph's diagnostic description for intellectual disability is a prerequisite to consideration of paragraphs A through D, the "severity prongs" of listing 12.05.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [paragraphs A through D], we will find that your impairment meets the listing.").

In this case, the Court finds that Plaintiff has failed to demonstrate that he had the requisite deficits in adaptive functioning.  Although Plaintiff relies on examining psychologist Dr. Hardy's opinion, Dr. Hardy did not diagnose Plaintiff with mental retardation.  Instead, Dr. Hardy found that Plaintiff's cognitive ability fell within the range of borderline intellectual

functioning (Tr. 911).  The difference between borderline intellectual functioning and mental retardation is whether the individual has deficits in adaptive functioning.  *See* DSM-IV-TR at 41-42 (noting it is possible to diagnose mental retardation in individuals with IQs between 70 and 75 if they exhibit significant deficits in adaptive behavior; conversely, mental retardation would not be diagnosed in an individual with an IQ score lower than 70 if there are no significant deficits or impairments in adaptive functioning).  Indeed, Dr. Hardy specifically noted that Plaintiff's testing "reflects scores that in the absence of history could be *misdiagnosed* with Mild Mental Retardation.  In light of his history  . . . [Plaintiff's] functioning *does not meet* the capsule definition of Mental Retardation" (Tr. 912) (emphasis provided).  In addition, Dr. Houston reviewed the record and completed pre-hearing interrogatories in which he opined, *inter alia*, that Plaintiff did not meet Listing 12.05 because he did not show the required deficits in adaptive functioning (Tr. 835-38).   Additionally, the ALJ also relied on the fact that Plaintiff was able to attend high school, read a newspaper, work at two different jobs, perform a wide range of daily activities, and care for his young son.  Thus, the Court finds that the ALJ reasonably concluded that Plaintiff did not meet the requirements of Listing 12.05, because he failed to demonstrate the required deficits in adaptive functioning.  *See, e.g.*, *Bland v. Astrue*, 432 F. App'x 719, 723 (10th Cir. 2011) (unpublished) (finding, despite an IQ score of 67 and severe physical impairments, that the plaintiff did not meet Listing 12.05 because he did not show that he met the capsule definition; specifically, the plaintiff did not have the required deficits in adaptive functioning as the evidence showed that he was able to complete the 11th grade and perform unskilled and semi-skilled work for a number of years).

       Furthermore, the Court concludes that the ALJ did not err in determining that Plaintiff's subjective complaints were not credible.

The ALJ noted that Plaintiff reported he was able to care for his own personal needs, care for his young son, prepare meals, perform household chores, go grocery shopping, play basketball on a regular basis, and socialize with family members (Tr. 22).  Thus, the ALJ reasonably determined that Plaintiff's activities were inconsistent with his complaints of completely disabling mental limitations.  *See* 20 C.F.R. § 404.1529(c)(3)(i); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).  The objective medical evidence and Plaintiff's work history further support the ALJ's conclusion that his subjective complaints were not fully credible.  *See* 20 C.F.R. § 404.1529(c)(4); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  The Court concludes that the ALJ provided valid reasons for finding that Plaintiff's subjective complaints were not fully believable.  As such, the ALJ's findings regarding Plaintiff's credibility were supported by substantial evidence in the record.  And it is not this Court's role to reweigh the ALJ's credibility determination.  *See Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

The court further concludes that the ALJ reasonably evaluated the medical source opinions.

Examining psychologist Dr. Hardy assessed Plaintiff had mild to moderate mental limitations (Tr. 913-14).  Dr. Hardy found that Plaintiff had only mild limitations in his ability to understand, remember, and carry out simple instructions, interact appropriately with the public and co-workers, and respond appropriately to usual work situations and to changes in a routine setting (Tr. 913-14).  Dr. Hardy also opined that Plaintiff would have moderate limitations in his ability to interact appropriately with supervisors, make judgments on simple or complex

work-related decisions, and understand, remember, and carry out complex instructions (Tr. 913-14). The ALJ reasonably found that Dr. Hardy's opinion was consistent with the record as a whole (Tr. 25). Indeed, the opinion was consistent with record evidence, which demonstrated that Plaintiff's mental symptoms were no more than mild when he was taking his medication (Tr. 761, 786-87, 795-76, 798-99, 872-77, 908). Therefore, the ALJ reasonably gave great weight to this opinion and incorporated it into his RFC assessment (Tr. 25, 914), which was entirely consistent with (if not more restrictive than) Dr. Hardy's opinion (Tr. 18). *See, e.g.*, *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (when the medical evidence does not conflict with an ALJ's conclusion, "the need for express analysis is weakened").

Next, State agency psychologist Dr. Huebner opined that Plaintiff would be able to perform simple jobs without complex instructions that did not involve working closely with others (Tr. 131). State agency psychologist Dr. Kjolby later agreed that Plaintiff retained the ability to perform simple work with reduced public contact (Tr. 171). Because these opinions were consistent with the record as a whole, which showed that Plaintiff's mental impairments were not so severe as to preclude all work activity, the ALJ reasonably determined that they were entitled to great weight (Tr. 25). *See* 20 C.F.R. § 404.1527 (e)(2)(i) (State agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

Medical expert Dr. Houston reviewed the record and completed pre-hearing interrogatories in which he opined, *inter alia*, that Plaintiff did not meet Listing 12.05 because he did not show the required deficits in adaptive functioning; that the IQ test scores provided by Liz

McGill, Ph.D., were not accurate because Dr. McGill did not administer the test; and that additional IQ testing should be performed (Tr. 837-38). The ALJ properly gave great weight to Dr. Houston's opinion because it was consistent with the rest of the medical evidence, including the results of Dr. Hardy's psychological evaluation (which the ALJ ordered in response to Dr. Houston's recommendation that additional IQ testing should be performed) (Tr. 835, 837, 909-10).

In sum, the evidence in this case consistently indicated that any symptoms from Plaintiff's mental impairments were well-controlled when he was compliant with his medications and abstained from illegal drugs. *See Kelly v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Further, Plaintiff was capable of work in the past and he remained capable of a wide range of daily activities despite his longstanding mental impairments. However, the ALJ gave Plaintiff the benefit of the doubt and restricted him to significantly reduced range of unskilled work. The ALJ also reasonably found that, to account for Plaintiff's limitations in concentration, persistence, or pace, Plaintiff should be restricted to simple unskilled work that did not require more than a "low" stress, concentration, or memory level (Tr. 18). The Court finds that the ALJ reasonably considered the evidence, including Plaintiff's symptom testimony and the medical source opinions, in finding that Plaintiff retained the residual functional capacity to perform a significantly reduced range of unskilled work.

Finally, the Court concludes that the ALJ did not err at step five of the sequential evaluation process by finding that Plaintiff could perform other work that exists in significant numbers in the national economy.[1]

---

[1] Plaintiff asserts that the ALJ erred at step four in finding that he could perform his past relevant work as an industrial cleaner and box maker (Pl. Br. 18-19). However, because the ALJ made a

Here, the ALJ asked the vocational expert to identify unskilled jobs that a hypothetical individual with the same residual functional capacity as Plaintiff could perform (Tr. 105, 107; *see also* Tr. 515-16).  The expert testified that such an individual could perform the unskilled jobs of laundry laborer (1,800 jobs in the national economy, reduced by 40 percent), housekeeper cleaner (250,000 jobs in the national economy, reduced by 65 percent), and marker/labeler (33,000 jobs in the national economy, reduced by 70 percent) (Tr. 107-09).  The expert stated that these reductions, which accounted for all of the limitations in the ALJ's hypothetical, were based on her experience and her study of the jobs (Tr. 110).  *See* Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (noting that vocational expert testimony can include information not listed in the DOT).

Plaintiff argues that the ALJ could not rely on the vocational expert testimony because it conflicted with the Dictionary of Occupational Titles (DOT).  However, SSR 00-4p and Tenth Circuit case law require only that an ALJ "*ask* the [vocational expert] or [vocational specialist] if the evidence he or she has provided conflicts with the information provided by the DOT."  SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs

---

valid, alternative step five finding (Tr. 25-26), the Court finds that any error at step four was harmless.  *See, e.g.*, *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) ("Since the unchallenged step-five finding is, by itself, a sufficient basis for the denial of benefits, plaintiff's success on appeal is foreclosed regardless of the merit of his arguments relating to step four."); *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform a job was harmless since there were still two jobs claimant could perform).

Page 8

corresponds with the DOT, and elicit a reasonable explanation for any discrepancy on this point." (internal quotation marks and citation omitted)).

Here, the ALJ asked the vocational expert if her testimony included details and information not provided by the DOT job descriptions (Tr. 110). This is akin to the ALJ asking the expert if her testimony was consistent with the DOT. The expert explained that the DOT would not provide the same level of detail, and that such detail was the basis for the expert's reduction in numbers (Tr. 110). That was all that was required. *See* SSR 00-49, 2000 WL 1898704, at *2 ("[e]vidence from VEs . . . can include information not listed in the DOT); *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) ("[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000))); *see also Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (where there is a conflict between the DOT and a vocational expert's testimony, the DOT does not necessarily trump the expert).

Plaintiff also argues that the vocational expert's testimony—based on the ALJ's mental RFC limiting Plaintiff to General Educational Development (GED) reasoning level of one (Tr. 18)—conflicted with the DOT job description for Laundry Laborer and Marker Labeler, because the DOT described these jobs as having a GED reasoning level of two. *See* Dep't of Labor, *DOT*, App. C, § III (4th ed. 1991), *available at* 1991 WL 688702 (describing GED levels); *see also Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job,

broken into the divisions of Reasoning Development, Mathematical Development and Language Development.").

Nonetheless, Plaintiff does not challenge the job of housekeeper/cleaner, which is described by the DOT as only requiring a GED reasoning level of one. *See* DOT No. 323.687-014, 1991 WL 672783.  Thus, it is undisputed that the job of housekeeper/cleaner is completely consistent with the ALJ's hypothetical to the vocational expert.  And although the expert reduced the number of housekeeper/cleaner jobs available by 65%, to account for the limitations provided by the ALJ, even with such a reduction 87,500 housekeeper/cleaner jobs would remain available in the national economy (Tr. 109).  *See* 20 C.F.R. § 404.1566(a) (work exists in the national economy "when it exists in significant numbers either in the region where you live or in several other regions of the country"); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy).  The Court finds the unskilled job identified by the vocational expert is consistent with the residual functional capacity assessed by the ALJ and provides substantial evidence in support of the ALJ's step-five finding.  *See Ellison*, 929 F.2d at 537 (recognizing a vocational expert's testimony as substantial evidence supporting the ALJ's conclusion the claimant was not disabled).

## RECOMMENDATION

Because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, this Court hereby recommends that it be **AFFIRMED**.  The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections to this Report and Recommendation must be filed within fourteen (14) days

after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

Dated this 21st day of June, 2016.

BY THE COURT:

_____

PAUL M. WARNER
United States Magistrate Judge