IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROCKY VIGIL,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION<br><br><br><br>Case No. 2:14-CV-540 TS<br><br>District Judge Ted Stewart |

   This matter is before the Court on Plaintiff's Objection to the Magistrate Judge's Report and Recommendation.  For the reasons discussed below, the Court will adopt the Magistrate Judge's Report and Recommendation.

I.  BACKGROUND

   Plaintiff filed for Social Security and Supplemental Security Income benefits on February 16, 2012.  Plaintiff alleged impairments of borderline intellect and schizophrenia beginning November 30, 2009.  His claims were denied both initially and on reconsideration.  On December 12, 2012, Plaintiff received a hearing before an administrative law judge ("ALJ"), which resulted in an unfavorable decision for Plaintiff.  He subsequently appealed to the Appeals Council.  On June 13, 2013, the Appeals Council issued its order for remand.  The Appeals Council stated that the ALJ's determination inadequately considered the listing for mental retardation.  The Appeals Council noted that Plaintiff had an IQ Score of 67, which was considered a valid estimate, and also has a diagnosis of schizophrenia, which could be expected to impose additional work restrictions.  The Appeals Council directed the ALJ to further consider

whether Plaintiff's impairments meet or equal listing 12.05(C) under 20 CFR Part 404, Subpart P, Appendix 1, and "[i]n doing so, evaluate whether the [Plaintiff] has the requisite deficits in adaptive functioning."[1]

Following remand, the ALJ ordered pre-hearing interrogatories from medical expert Dr. Ronald Houston. A new hearing was conducted on November 19, 2013, during which Plaintiff and a vocational expert ("VE") testified. The ALJ ordered a psychological consultative examination post-hearing, which took place on December 11, 2013, by Dr. John Hardy, PhD. The ALJ subsequently issued his decision on February 24, 2014, denying Plaintiff benefits. Plaintiff again appealed to the Appeals Council and was subsequently denied rehearing. Thus, the ALJ's determination became the final decision of the Commissioner.[2]

Plaintiff filed his Complaint on August 4, 2014. This matter was subsequently referred to the Magistrate Judge pursuant to 28 U.S.C. 636(b)(1)(B). The Magistrate Judge issued his Report and Recommendation on June 21, 2016, recommending the ALJ's decision be affirmed. Plaintiff filed his Objection on June 28, 2016.

## II.  LEGAL STANDARD

As Plaintiff has objected, the Court reviews the Report and Recommendation de novo.[3]

> In order to conduct a de novo review a court "should make an independent determination of the issues . . . ; [it] 'is not to give any special weight to the [prior] determination' . . . ." "The district judge is free to follow [a magistrate

---

[1] R. at 212.

[2] *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

[3] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

judge's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."[4]

In reviewing the Commissioner's decision, the Court looks to "whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."[5] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[6] "The substantial-evidence standard does not allow [the court] to displace the agencies' 'choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"[7]

### III. DISCUSSION

Following remand from the Appeals Council, the ALJ reconsidered Plaintiff's claim using the five-step sequential evaluation as set forth under 20 C.F.R. § 404.1520.  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 30, 2009.  At step two, the ALJ determined that Plaintiff has borderline intellectual functioning, psychotic disorder NOS, schizophrenia, and a substance addiction disorder, which when combined, results in some limitation in the ability to perform work activity.  At step three, the ALJ found that Plaintiff did not have an impairment that met or equaled the severity of one of the listed impairments under 20 CFR Part 404, Subpart P, Appendix 1.  Of specific relevance, the

---

[4] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967)); *Mathews v. Weber*, 423 U.S. 261, 271 (1976).

[5] *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1080 (10th Cir. 2004)).

[6] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett*, 395 F.3d at 1172).

[7] *Custer Cty Action Ass'n v. Garvey*, 256 F.3d 1024, 1030 (10th Cir. 2001) (quoting *Arapahoe Cty. Pub. Airport Auth.*, 242.F.3d 1213, 1218 (10th Cir. 2001)).

ALJ found that Plaintiff's impairments do not meet or equal Listing 12.05 for intellectual disability because he could not meet the diagnostic capsule definition.

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "the full range of unskilled work with no exertional limitations," but that such work could not require more than a low stress level, a low concentration level, and a low memory level.[8] Finally, at step four, the ALJ determined that Plaintiff is capable of performing past relevant work and also found in the alternative, at step five, other jobs within the national economy that Plaintiff could perform. Accordingly, the ALJ denied Plaintiff's claim.

The Magistrate Judge recommends the District Court affirm the ALJ's decision. Plaintiff objects to the Magistrate Judge's recommendation and argues that the ALJ: (1) erred in not conducting an "equivalence analysis" to determine whether he equaled the Listing 12.05(C) for intellectual disability; (2) erred in his credibility analysis; (3) inadequately interviewed the vocational expert ("VE") during the hearing; and (4) erred in weighing the medical source evaluations. Plaintiff's objections are unpersuasive.

    A. *Listing 12.05 Requirements*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Plaintiff challenges the ALJ's findings as to listing 12.05 for intellectual disability.

Listing 12.05 for intellectual disability states,

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

---

[8] R. at 18.

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

****

C. A valid verbal, performance, or full scale of IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

****[9]

The introductory paragraph of listing 12.05 contains a diagnostic description, often referred to as the capsule definition. Under 20 C.F.R. pt. 404, subpt P. app, 1, § 12.00(A), Plaintiff's impairment must first satisfy the diagnostic description in the capsule definition before he is required to meet or equal one of the four severity requirements in paragraphs A, B, C, or D. Therefore, the ALJ had to first determine whether Plaintiff suffered from "deficits in adaptive functioning" before he determined whether Plaintiff also meets or equals one of the four severity requirements in paragraphs A through D.[10] An equivalence analysis is conducted in accordance with 20 C.F.R. §§ 404.1526 and 416.926.

Plaintiff argues that the ALJ erred in failing to conduct an equivalence analysis to determine whether he met or equaled the listing 12.05(C) impairment. However, Plaintiff fails to recognize that the ALJ concluded that Plaintiff did not meet the capsule definition of listing 12.05, and therefore was not required to conduct an equivalence analysis.

The ALJ relied on Dr. Houston and Dr. Hardy's medical evaluations and Plaintiff's testimony in determining that Plaintiff did not meet the capsule definition for intellectual disability. Dr. Houston completed interrogatories prior to the hearing in which he evaluated the

---

[9] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.
[10] *Id*.

findings of treating physician Dr. Liz McGill. Dr. McGill determined that Plaintiff had a full scale IQ score of 67. However, Dr. Houston questioned the validity of Dr. McGill's findings stating,

> The problem is that actual hands on testing was done by a psych intern not Dr. McGill who essentially signs off on the findings. Dr. McGill had no direct observation of claimant to know whether he put forth good effort.
> The subtest scores are so low and flat with no variability that effort and motivation must be questioned. Even the most developmentally disabled or cognitively challenged individual is going to have some variability in their performance. The flat evenness of subtest scores strongly suggests a lack of effort.
> Also odd is that Dr. McGill does not rule out for mental retardation or an actual dx of Borderline Intellectual Functioning which the scores if you assumed were valid would indicate. This is a major oversight and diagnostic error. In light of this oversight the entire validity of this testing is questionable and cannot be factored into a disability decision.[11]

Dr. Houston concluded that,

> [listing] 12.05 does not enter into the disability conversation because there are no developmental records. . . . There is no way to establish adaptive impairments using a formal measure. Nor is there a way to establish the important criterion which is developmental onset before the age of 21 or 22.[12]

In a subsequent post-hearing evaluation, Dr. Hardy diagnosed Plaintiff with Psychotic Disorder NOS, a history of polysubstance abuse vs. dependence, and borderline intellectual functioning. Dr. Hardy concluded, "In light of history and likely underlying learning challenges his functioning does not meet the capsule definition of Mental Retardation, hence the diagnosis of Borderline Intellectual functioning is offered."[13]

---

[11] R. at 837.

[12] *Id*. at 838.

[13] *Id*. at 912.

The ALJ also relied on Plaintiff's testimony that suggested he was capable of handling his own activities of daily living, including caring for his own personal needs, helping to care for the needs of his adolescent child, preparing meals, housecleaning, watching television and movies, playing video games, playing basketball, playing with is son, visiting with family members, attending medical appointments, and shopping.[14]  The ALJ reasoned that these abilities are inconsistent with Plaintiff's allegations of mental impairment and concluded that Plaintiff did not have the requisite deficits in adaptive functioning as required under the capsule definition of listing 12.05.  Thus, the ALJ based his findings on substantial evidence from the record.

*D. Credibility Analysis*

Plaintiff argues that the ALJ's credibility analysis is inaccurate and essentially disagrees with the ALJ's weighing of the evidence.  The Court however, may not "reweigh the evidence [n]or substitute [its] judgment" for the ALJ's.[15]  An ALJ "is in the best position to observe the demeanor of witnesses at a hearing, and, as a result, the [ALJ's] credibility findings deserve special deference."[16]

Plaintiff contends that his ability to engage in personal activities such as cooking, cleaning, or a hobby does not constitute substantial evidence that he has the functional capacity to engage in substantial gainful activity.  However, substantial evidence supports the ALJ's finding that Plaintiff's allegations of disability are not fully credible.  The ALJ noted that although Plaintiff reported an extremely limited lifestyle due to his mental impairments, he was

---

[14] *Id*. at 16.

[15] *Hackett*, 385 F.3d at 1172.

[16] *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1201 (10th Cir. 2004) (citation omitted).

capable of activities and abilities that belie his contentions, including an ability to care for himself and his adolescent child, prepare meals, play video games, attend medical appointments, and go shopping.[17] The ALJ found significant support in the record that suggests improvement in Plaintiff's symptoms with ongoing treatment compliance and abstinence from drugs.[18] Also relevant to the ALJ was the fact that Plaintiff lost his last job as a box maker due to cutbacks, not his mental impairment. Lastly, the ALJ noted that, although Plaintiff testified in November 2013 that "he could not leave his home without someone, just three months later he stated at a psychological consultative examination he was able to shop independently."[19] Thus, the ALJ's credibility analysis was supported by substantial evidence in the record.

    E.  *Vocational Expert*

Plaintiff takes issue with the ALJ's examination of the VE during the hearing on November 19, 2013. At the hearing, the ALJ asked the VE to identify jobs that a hypothetical individual with the same RFC as Plaintiff could perform. The ALJ described the hypothetical individual as having "no limitations physically, substantial limitations mentally" and required the job to be "unskilled" with "low stress, low concentration, low memory."[20] The ALJ also restricted the hypothetical to jobs with a General Educational Development ("GED") reasoning level of 1, math level of 1, and language level of 1, and provided limitations in "occasional" contact with supervisors and coworkers, the ability to deal with only "occasional" changes in a

---

[17] R. at 22.

[18] *Id.* at 20–21.

[19] *Id.* at 22.

[20] *Id.* at 105.

routine work setting, and the ability to remember and deal with only "rare" changes in work instructions from week to week, among other limitations.

In response, the VE provided the ALJ with three job descriptions she believed matched the hypothetical and then reduced the number of jobs in the national economy available for each job to account for the limitations.[21] The VE found that Plaintiff could perform the unskilled jobs of laundry laborer (1,800 jobs in the national economy, reduced by 40 percent), housekeeper cleaner (250,000 jobs in the national economy, reduced by 65 percent), and marker/labeler (33,000 jobs in the national economy, reduced by 70 percent).

Plaintiff contends that although the ALJ requested the VE provide jobs that matched the reasoning, math, and language levels of 1, the jobs of laundry laborer and marker/labeler both have reasoning levels of 2 according to the Dictionary of Occupational Trade ("DOT"). Plaintiff argues that this error is harmful and merits remand. However, the VE did provide the ALJ with one job, the housekeeper cleaner position, which matches the reasoning, math, and language levels of 1 provided by the ALJ. The VE testified that there are 250,000 housekeeper cleaner jobs in the national economy and reduced that number by 65 percent to account for the limitations. Even at the reduced level, there are significant numbers of housekeeper cleaner jobs available in the national economy.

Plaintiff argues that the ALJ erred in presenting limitations to the VE in a hypothetical during the hearing that were inconsistent with the RFC findings in his decision. Specifically, the VE was presented with a written RFC that included Plaintiff's limited ability to deal with only

---

[21] *Id*. at 107–09.

"occasional" changes in a routine work setting, rather than his limited ability to deal with only "rare" changes in a routine work setting, which was what was included in the ALJ's decision.

Defendant admits that there was an inconsistency, but contends that the error is merely a harmless "scrivener's error" that does not merit remand. Plaintiff argues that the error is material in that it would have further reduced the number of jobs available to Plaintiff had the "rare" limitation been provided in the hypothetical. However, Plaintiff does not point to any authority that suggests that a different result would have occurred based on that inconsistency.

As Defendant suggests, although the ALJ's hypothetical included limitations of "occasional changes in a routine work setting" as opposed to rare changes, the VE was also presented with limitations regarding "rare changes in work instructions from week to week" in the hypothetical. Therefore, she was presented with both limitations and concluded that Plaintiff remains capable of work. Thus, Plaintiff's argument that the VE's conclusion would have been materially altered had the word "rare" instead of "occasional" been used in the one limiting instruction at the hearing is unpersuasive.

Plaintiff also argues that the ALJ failed to ask the VE whether his testimony was consistent with the DOT. SSR 00-4p states that the ALJ must "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT]."[22] At the hearing, the ALJ asked the VE whether the job description in the DOT would include the detailed limitations discussed between them. The VE testified that the DOT would not provide as many details—hence, why she reduced the numbers so significantly. The VE explained that she based her reductions on her "experience as a rehab

---

[22] SSR 00-4p, 2000 WL 1898704.

counselor and understanding the varied environments by which these types of jobs exist."[23] Therefore, the ALJ adequately obtained a reasonable explanation for any difference in occupational evidence as provided by the VE and the DOT as required under the regulations.

Lastly, Plaintiff argues that the ALJ did not present Plaintiff's limitation in concentration, persistence, or pace to the VE in the hypothetical. However, the limitations Plaintiff refers to are used to rate the severity of mental impairments at steps 2 and 3, and are not used at steps 4 and 5 in an RFC assessment.[24] Therefore, the ALJ was not required to mention these limitations to the VE in his hypotheticals. Thus, Plaintiff's challenges to the ALJ's examination of the VE are unpersuasive.

F. *Medical Opinion Evaluation*

Plaintiff argues that the ALJ erred in evaluating the medical source opinions. 20 C.F.R. §§ 404.1527 and 416.927 set forth factors the ALJ must consider in weighing medical opinions from treating sources, nontreating sources, and nonexamining sources.[25] "Those factors are:

> (1) [t]he length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion s rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."[26]

---

[23] R. at 110.

[24] *See* SSR 96-8p, 1996 WL 374184 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

[25] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[26] *Id*. at 1301.

Plaintiff argues that the ALJ failed to adequately weigh Dr. Hardy's evaluation and explain why he did not give the limitations in it consideration, especially where the ALJ stated he gave Dr. Hardy's evaluation "great weight."  Plaintiff argues that Dr. Hardy's RFC "demonstrates that Plaintiff cannot meet the basic mental demands of unskilled work which includes the ability, on a sustained basis, to understand, remember and carry out simple instructions."[27]  However, this is an inaccurate characterization of Dr. Hardy's evaluation of Plaintiff.

Dr. Hardy's RFC noted mild limitations in Plaintiff's ability to understand and remember simple instructions, carry out instructions, interact appropriately with the public, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.[28]  Dr. Hardy also noted moderate limitations in Plaintiff's ability to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with supervisor(s).[29]

The ALJ stated that because Dr. Hardy did not have a treating relationship with Plaintiff, his opinion was not given controlling weight.  However, the ALJ assigned great weight to Dr. Hardy's opinion because it was consistent with the rest of the medical evidence.[30]  Ultimately, the ALJ took into account Dr. Hardy's mild to moderate limitations when he limited Plaintiff's

---

[27] Docket No. 37, at 4.

[28] R. at 913–14.

[29] *Id.*

[30] *Id.* at 25.

RFC to unskilled work requiring no more than a low stress level, low concentration level, and low memory level.[31]

Plaintiff also objects to the ALJ's reliance on the opinions of the state agency physicians because he claims that those sources based their opinion on incomplete medical records.

Here, the ALJ afforded the state agency physicians the weight of expert medical opinions by non-examining physicians in accordance with SSR 96-6p. Under SSR 96-6p, the ALJ is "not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."[32]

Though the state agency physicians conducted their evaluations prior to the remand and did not consider Dr. Houston and Dr. Hardy's subsequent evaluations, the ALJ noted that the "evidence received into the record after the reconsideration determined as well as the claimant's testimony did not provide any new or material information that would substantially alter any finding about the claimant's residual functional capacity" and, accordingly, assigned great weight to their opinions.[33] Thus, the ALJ provided an explanation for the weight he assigned the state agency physicians' evaluations in accordance with the regulations.

Plaintiff repeats this argument as to Dr. Houston's evaluation. Plaintiff argues that Dr. Houston based his opinion on incomplete medical records as he did not review "the subsequent

---

[31] *Id.* at 18–21.

[32] SSR 96-6p, 1996 WL 374180.

[33] R. at 25.

CE and scores."[34] It appears Plaintiff is referring to the fact that Dr. Hardy's subsequent post-hearing evaluation was not considered by Dr. Houston in his pre-hearing interrogatories.

However, the ALJ found that Dr. Houston's opinions were consistent with the rest of the medical evidence. More specifically, he found Dr. Houston's opinions consistent with "medical evidence received post-hearing in the form of a psychological consultative examination by [Dr. Hardy] showing higher intelligence scores."[35] The ALJ went on to explain that he did not assign controlling weight to Dr. Houston's opinion as he did not have a treating relationship with Plaintiff, but that he still gave his opinion great weight. Thus, the ALJ provided an explanation for his evaluation of Dr. Houston in accordance with regulations.

Lastly, Plaintiff argues that the ALJ erred in assigning "very little weight" to treating physician Dr. McGill's evaluation. Plaintiff argues that Dr. McGill's opinion is consistent with the record as a whole and the weight of her evaluation should not have been discounted.

Generally, an ALJ should give more weight to the opinion of a treating physician.[36] However, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."[37] In reviewing a treating source, the analysis is sequential.[38] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory

---

[34] Docket No. 37, at 7.

[35] R. at 24.

[36] *Watkins*, 350 F.3d at 1300.

[37] SSR 96-2p, 1996 WL 374188.

[38] *Watkins*, 350 F.3d at 1300.

techniques.[39]  Second, the ALJ must confirm that the opinion is consistent with other substantial evidence in the record.[40]  If the ALJ finds that the opinion is not well-supported or that it is inconsistent with the other substantial evidence in the case record, he must articulate with sufficient specificity reasons in his decision for the weight he ultimately assigns the opinion.[41]

The ALJ found that Dr. McGill's findings were not consistent with the general medical evidence and assigned very little weight to her opinion.  First, the ALJ relied on Dr. Houston's opinion regarding Dr. McGill's evaluation which questioned her clinical techniques and the validity of her scores.  Second, the ALJ found that Dr. McGill's evaluation was not consistent with the substantial evidence in the record, including Dr. Hardy's post-hearing evaluation in which he diagnosed Plaintiff with a higher IQ score than Dr. McGill had originally diagnosed.  Thus, the ALJ articulated with sufficient specificity reasons for the weight he ultimately assigned the treating physician's opinion.  No more is required.

---

[39] *Id*.

[40] *Id*.

[41] *Id*. at 1300–01.

IV. CONCLUSION

It is therefore

ORDERED that the Magistrate Judge's Report and Recommendation (Docket No. 34) is ADOPTED.  The Court AFFIRMS the decision of the ALJ.

The Clerk of the Court shall enter judgment and close this case forthwith.

DATED this 19th day of September, 2016.

                BY THE COURT:

                _____
                Ted Stewart
                United States District Judge